# EXHIBIT 1

**ELECTRONICALLY FILED**
Superior Court of California,
County of Kern
y: Alexandra Valles-Guerrero, Deputy Clerk
**10/10/25 1:01 PM**

Boris Treyzon, Esq. (SBN 188893)
*btreyzon@actslaw.com*
Derek Braslow, Esq. (Pro Hac Vice Forthcoming)
*dbraslow@actslaw.com*
Pinar Kermani, Esq. (SBN 355486)
*Pkermani@actslaw.com*
Michael Zuzo, Esq. (SBN 356667)
*mzuzo@actslaw.com*
**ABIR COHEN TREYZON SALO, LLP**
16001 Ventura Blvd., Ste. 200
Encino, CA 91436

Attorneys for Plaintiff,
JANE AC DOE

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF KERN

| | |
|---|---|
| JANE AC DOE,<br><br>                    Plaintiff,<br><br>    v.<br><br>THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; CORPORATION OF THE PRESIDENT OF THE BAKERSFIELD CALIFORNIA STAKE, THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a California corporation; SANTA BARBARA CALIFORNIA STAKE OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, an entity of unknown form; and DOES 1 to 100,<br><br>                    Inclusive,<br><br>                    Defendants. | Case No.:  25CUB00204<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **NEGLIGENCE**<br>2. **NEGLIGENT SUPERVISION OF A MINOR**<br>3. **SEXUAL ABUSE OF A MINOR**<br>4. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>5. **NEGLIGENT HIRING, SUPERVISION, AND RETENTION**<br>6. **NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE PLAINTIFF**<br>7. **BREACH OF MANDATORY DUTY**<br>8. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff, JANE AC DOE, of and for her causes of action against Defendants, and each of them, complains and alleges as follows:

**INTRODUCTION**

1.       This case involves egregious sexual and emotional abuse of a child.

2.       Between approximately 1994 and 2001, while spending summers in California, minor Plaintiff JANE AC DOE was systematically and repeatedly abused by adult male leaders of The Church of Jesus Christ of Latter-Day Saints, including the Young Men's President, First Counselor, and Secretary of the Bakersfield and Santa Barbara Stakes. The abuse occurred on numerous occasions, most frequently on Church property in Bakersfield and Santa Barbara, including in the chapel, on the gymnasium stage, and on adjacent recreational fields, as well as during Church-sponsored youth camps. The extreme sexual and emotional abuse was directly connected to Defendants' youth programs and activities, and was made possible by the authority, trust, and access Defendants conferred upon these leaders.

**PARTIES**

3.       Plaintiff JANE AC DOE (hereinafter **"PLAINTIFF"**) is an adult female under the age of forty at the time of this filing and a resident of Sacramento, California. As a victim of childhood sexual assault, as defined by section 340.1 of the California Code of Civil Procedure, the name "Jane AC Doe" is not the Plaintiff's actual name, but is a fictitious name utilized to protect his privacy. Jane AC Doe is entitled to protect his identity in this public court filing by not disclosing his name. (*See, Doe v. Lincoln Unified School District* (2010) 188 Cal.App.4th 758. As a minor, Plaintiff was the victim of repeated unlawful sexual assault, molestation, abuse, and other extreme conduct perpetrated by adult male leaders of The Church of Jesus Christ of Latter-Day Saints, including but not limited to the Young Men's President, First Counselor, and Secretary of the Bakersfield and Santa Barbara Stakes (hereinafter "**PERPETRATOR(S)**").

4.        Plaintiff's full identity has been concealed from public court filings to prevent those not directly involved in this action from learning her identity and making her identity public, as such a public disclosure would further harm Plaintiff and his family.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

5.      Defendant THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS (hereinafter "**CHURCH**") is, and at all relevant times was, a nonprofit religious corporation organized under the laws of the State of Utah, with its principal place of business at 50 East North Temple, Salt Lake City, Utah 84150. The Church is registered to do business in California and conducts continuous and systematic activities within the state. The Church operates wards, stakes, congregations, temples, and other houses of worship in California, including meetinghouses located in Bakersfield and Santa Barbara, California. During the relevant period, adult male leaders— including the Young Men's President, First Counselor, and Secretary of the Bakersfield and Santa Barbara Stakes—held and used their official positions within the Church to groom and sexually abuse Plaintiff in connection with Church-sponsored youth activities and while on Church premises. The presiding bishops, stake presidents, and other leaders of the Church serve at the pleasure of, and under the direct and absolute control of, the Church. The Church's organizational divisions include wards, stakes, and areas. The Church is independently liable for its own acts and omissions, is liable as successor in interest to other Defendant entities, and/or is an alter ego of its co-defendants.

6.      Defendant THE TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS (hereinafter **"TEMPLE CORPORATION")** is and was at all relevant times herein mentioned, a religious entity and subsidiary of the Church. The Temple Corporation is a nonprofit corporation duly organized and operating pursuant to the laws of the State of Utah, with its principal place of business at 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150. The Temple Corporation operates properties, temples and other houses of worship within the State of California, including facilities located in Bakersfield and Santa Barbara. The Temple Corporation conducts continuous and systemic activities in California and is registered to do business in the state of California. The Temple Corporation operates, maintains and manages the Church's properties at the direction of and under the control of the Church. The Temple Corporation is independently liable for its own conduct as alleged herein, is liable as a successor in interest to the other Defendant entities, and/or is an alter ego of Defendants.

7.      Defendant THE CORPORATION OF THE PRESIDENT OF THE BAKERSFIELD

CALIFORNIA STAKE, THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS (hereinafter the "**BAKERSFIELD CALIFORNIA STAKE**"), is and was at all relevant times herein mentioned, a religious entity and subsidiary of the Church. The Bakersfield California Stake is a corporation sole duly organized and operating pursuant to the laws of the State of California. The Bakersfield California Stake does business with and conducts continuous and systemic activities in California. The Bakersfield California Stake's principal place of business is located in Bakersfield, California. The Bakersfield California Stake is registered to do business in California and operates, maintains, and manages the Church's congregations and wards within Kern County at the direction of and under the control of the Church. The Bakersfield California Stake had responsibility for the Church's operations, youth programs, and activities in Bakersfield, California, where Plaintiff attended Church services and where much of the abuse occurred. The Bakersfield California Stake reports directly to the Church. The Bakersfield California Stake is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

8.     Defendant SANTA BARBARA CALIFORNIA STAKE OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS (hereinafter "**SANTA BARBARA CALIFORNIA STAKE"**) is, and at all relevant times was, a religious entity of unknown form and a subsidiary of Defendant Church. The Santa Barbara California Stake conducts continuous and systematic activities in California and, upon information and belief, maintains its principal place of business in Santa Barbara, California. It operates, maintains, and manages The Church's congregations and wards within Santa Barbara County under the direction and control of the Church. At all relevant times, the Santa Barbara California Stake had responsibility for some or all Church operations, youth programs, and activities within Santa Barbara County, including the meetinghouses where Plaintiff attended Church services and where abuse occurred. The Santa Barbara California Stake is independently liable for its own conduct, is liable as a successor in interest to other Defendant entities, and/or is an alter ego of Defendants.

9.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant

hereto, Plaintiff and her perpetrators participated in Church activities at meetinghouses and facilities of both the Bakersfield California Stake, located in Kern County, California, and the Santa Barbara California Stake, located in Santa Barbara County, California. The perpetrators included the Young Men's First Counselor and the Young Men's Secretary of the Bakersfield California Stake, and the Young Men's President of the Santa Barbara California Stake. These meetinghouses and facilities, such as the chapel, gymnasium stage, and adjacent recreational fields, were subdivisions of the respective Stakes and, at all relevant times, operated under the authority and direction of the Church. The leaders of the Bakersfield and Santa Barbara Stakes, including their bishops, stake presidents, and other ecclesiastical officers, exercised supervisory and disciplinary authority over Church premises, youth programs, and participants at all relevant times. The abuse alleged herein occurred in Kern County and Santa Barbara County, California, during and in connection with Church activities, while on Church premises and at Church-sponsored youth camps, and under the control and authority of Defendants.

10.    Defendants, and each of them, assumed responsibility for the wellbeing of their members, including minors, through clergy and volunteers appointed by the Church. In their capacities as Bishop, Stake President, Relief Society President, Missionary, Primary teacher, Elder, Counselor, Clerk, and youth leaders such as Young Men's Presidents, First Counselors, and Secretaries, Defendants and their agents were placed in positions of trust, responsibility, and authority over Church members. As a result, Defendants had a special relationship with members of the congregation, including the minor Plaintiff, who participated in youth programs and activities of the Bakersfield California Stake and the Santa Barbara California Stake, which gave rise to a duty to protect her from foreseeable risks of harm. At all relevant times, Defendants also maintained disciplinary processes and red-flagging systems designed to identify and monitor sexual predators or other dangerous individuals within the membership in order to protect child congregants, including Plaintiff, from abuse, but failed to adequately implement or enforce those protections.

11.    Defendants' income comes from member tithes which are turned over to the Church for investment and other uses, including support of the administrative expenditures of the

Defendants' wards, stakes and areas. The Church does not provide information about their finances to their members or the public. Upon information and belief, the Church receives more than seven (7) billion dollars a year in tithing from members. Upon information reported publicly in the media, The Church of Jesus Christ of Latter-day Saints owns financial assets and real estate in excess of 200 billion dollars.

12.     The true name[s] and capacities, whether individual, plural, corporate partnership, associate, or otherwise, of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff at this time, who, therefore, sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that the acts and omissions of said Defendants were the legal cause of the injury to Plaintiff and the resulting injury and damages to Plaintiff as hereinafter alleged. Plaintiff will amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

13.     Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in interest and/or joint venturers of their co-Defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture and that each and every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring and retention of each and every Defendant as an agent, employee, successor-in-interest and/or joint venture.

14.     All of the acts, conduct and nonfeasance herein carried out by each and every representative, employee or agent of each and every Defendant, was authorized, ordered and directed by their respective Defendant's corporate or business employers, officers, directors and/or managing agents; that in addition thereto, said corporate or business employers, officers, directors and/or managing agents had advance knowledge of, authorized and participated in the herein described acts, conduct and nonfeasance of their representatives, employees, agents and each of

them; and that in addition thereto, upon the completion of aforesaid acts, conduct and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers directors, and/or managing agents, respectively ratified, accepted the benefits of, condoned and approved of each and all said acts, conduct or nonfeasance of their co employees, employees and agents.

15.    The perpetrators, including the Young Men's President of the Santa Barbara California Stake, and the Young Men's First Counselor and Secretary of the Bakersfield California Stake, acted as employees, agents, servants, and/or authorized representatives of Defendants when they sexually assaulted Plaintiff, who was then a minor.

16.    During the period of childhood sexual assault and abuse of Plaintiff, Defendants supervised and exercised control over the perpetrators.

17.    Each Defendant is responsible, in some manner, for the events and happenings herein referred to, thereby legally causing the injuries and damages to Plaintiff as hereinafter alleged.

18.    Except as otherwise noted, a reference to "DEFENDANTS" in this Complaint shall include CHURCH, TEMPLE CORPORATION, BAKERSFIELD CALIFORNIA STAKE, SANTA BARBARA CALIFORNIA STAKE, and DOES 1 through 100, inclusive.

## JURISDICTION AND VENUE

19.    This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has their main place of business in, and/or systematically and continually has conducted and continues to conduct business in the State of California, including within Kern County and Santa Barbara County.

20.    The subject incidents upon which this Complaint is based occurred in the City of Bakersfield, within the County of Kern, and in the City of Santa Barbara, within the County of Santa Barbara, in the State of California. As such, venue is proper in the Superior Court of California County of Kern.

## FACTUAL ALLEGATIONS
### (Common to All Causes of Action)

21.    The Church of Jesus Christ of Latter-day Saints is led by the President, also known

as the Prophet, who selects two others as counselors to assist him in his functions of overseeing the Church. The President and his Counselors function as the First Presidency, which is the highest governing body of the Church.[1]

22.    The Quorum of the Twelve Apostles is the second-highest governing body of the Church. The apostles are regarded by Church members as "special witnesses" of Jesus Christ throughout the world. They travel frequently, addressing congregations of members and meeting with, advising, and managing local leadership.

23.    Together, the First Presidency and the Quorum of the Twelve Apostles declare and establish policy, and oversee the entire Church, including every Stake and Ward in California. [2]

24.    The Quorum of the Seventy exists to assist the Quorum of the Twelve Apostles in the overseeing, directing and managing local leadership and they serve in locations throughout the world. There are currently twelve Quorums of the Seventy, each assigned to a designated geographical location called an Area. Members of the Quorum of the Seventy live and work within the Area they serve, including California, and report directly to the twelve apostles.

25.    Each Area that a Quorum of the Seventy oversees is comprised of Stakes and within each Stake are Wards. The Stakes are directed and controlled by a Stake President, who acts under the direction of the Quorum of the Seventy in his Area. Stake Presidents, acting with approval of the First Presidency, can call a member to become a Bishop.[3] In California, there are an estimated 147 Stakes.

26.    Bishops, appointed and overseen by the Stake President, are responsible for the spiritual development of the Ward's members, focusing on the rising generation of children.[4] Bishops are also responsible for the Ward's finances and record keeping.

27.    Each Stake President calls upon 12 high priests to form the Stake High Council.[5] If

---

[1] https://www.churchofjesuschrist.org/learn/global-leadership-of-the-church?lang=eng
[2] [LDS] Gen. Handbook, Ch. 5 § 5.1.1.1 at 26 (Aug. 2023)
[3] [LDS] Gen. Handbook, Ch. 6 § 6.2.1.5 at 33 (Aug. 2023)
[4] [DOE 1] Gen. Handbook, Ch. 7 § 7.1 at 45 (Aug. 2023)
[5] Doctrine and Covenants 102:1; 124:131

an elder is called to serve on the high council, he is ordained a high priest before he is set apart. Under the direction of the stake presidency, high councilors help with God's work of salvation and exaltation in the stake.[6]

28.     Defendants, through their bishops, stake presidents, leaders, agents, and employees, knew, should have known, or reasonably suspected that the Young Men's President of the Santa Barbara California Stake, and the Young Men's First Counselor and Secretary of the Bakersfield California Stake, were engaging in sexual abuse of Plaintiff. The abuse occurred repeatedly during Church-sponsored youth programs and activities, and on Defendants' premises, including meetinghouses, chapels, gymnasium stages, and recreational fields in Bakersfield and Santa Barbara, California, as well as at Church-sponsored youth camps.

29.     Each Stake creates and maintains meticulous sets of membership records which are reviewed and controlled by The Church of Jesus Christ of Latter-day Saints. Membership records are the Church's way of tracking its members. Members are not allowed access to their records and must receive approval to view them under the supervision of the Bishop. These records include names, addresses, callings, and temple recommendations. The records also contain additional membership information such as new members, members in military service, members who are adopted, children who are born out of wedlock, and records of children of divorced parents. Records are created by the local Bishops, approved by the Stake President, and ultimately transmitted to the Church.

30.     Records with "annotations" are also maintained by Defendants. Annotations are made where a member's conduct has threatened the well-being of other persons or of the Church as a whole. Annotations are made when a member is disciplined by the Bishop or Stake President for ***"incest, sexual offense against or serious physical child abuse, plural marriage, an elective transexual operation, repeated homosexual activities (by adults), or embezzlement of church funds."*** All annotations placed on a member's record are approved by the First Presidency.

31.     Defendants maintain a pattern and practice of concealing abuse from the authorities,

---

[6] https://www.churchofjesuschrist.org/study/manual/general-handbook/6-stake-leadership?lang=eng

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

and signals that its members should conceal and/or fail to report abuse so as to keep "the Church from being inappropriately implicated in legal matters." *See President Russell M. Nelson Letter* (August 4, 2020)[7]. Through this policy of concealment, Defendants ratify abusive conduct, perpetuating a culture of concealment and encouraging a lack of cooperation among Church members with law enforcement.

32.    The Stake Presidents and Bishops Handbook states as follows: "[i]n instances of abuse, the first responsibility of the Church is to assist those who have been abused, and to protect those who may be vulnerable to future abuse."

33.    In 1995, Defendants created a 1-800 Help Line to report abuse, but it is only available to ecclesiastical leaders. Utah's Supreme Court characterized the Help Line as "a 1-800 number that bishops and other Church clergy can call when they become aware of possible abuse. The Help Line is available 24 hours a day, 365 days a year and is staffed by legal and counseling professionals who 'provide guidance to the bishop on how to protect the [victim] from further abuse, and how to deal with the complex emotional, psychological, and legal issues that must be addressed in order to protect the victim.'"[8]

34.    In reality, The Church of Jesus Christ of Latter-day Saints primarily staffs the Help Line with attorneys. Rather than notifying law enforcement or other government authorities when Bishops or other Church clergy members call the Help Line regarding sexual abuse within the Church, Help Line operators transfer these calls to attorneys, who regularly advise the Bishops not to report the abuse incident to law enforcement, misrepresenting clergy-penitent privilege laws as their reasoning.

35.    Defendants' policies and protocols further direct teachers and other mandated reporters who suspect a minor may report abuse to them to encourage the minor to instead speak with a Bishop or Stake President and thus circumvent their mandatory duty to disclose and report abuse.

---

[7] See, President Russell M. Nelson Letter (August 4, 2020); See also, FOX 13 Investigates: LDS Church urges leaders to not participate in 'any type of court case'

[8] *See*, *MacGregor v. Walker*, 322 P.3d 706, 707 (2014).

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

36.     In another sexual abuse-related civil lawsuit against the Church and its agents, an attorney for the Church "acknowledged during a pretrial deposition that the firm uses information gleaned from helpline calls to identify cases that pose a high financial risk to the [] Church."[9]

37.     In other words, the Church implements the Helpline not for the protection and spiritual counseling of sexual abuse victims, as professed in Church doctrine and literature, but for attorneys to snuff out complaints and protect the Church and its wards from potentially costly lawsuits. This is consistent with the instructions set forth in President Russell M. Nelson's Letter, dated August 4, 2020, encouraging congregants to avoid cooperating with authorities asking for information on abuse.

38.     Defendants' actions embody a culture that protects sexual predators, rather than innocent and vulnerable children. Defendants handled the repeated abuse internally as "a matter of sin," and not one leader reported any matter to police. Instead, Defendants, their bishops, and personnel allowed predators such as the Young Men's President of the Santa Barbara California Stake, and the Young Men's First Counselor and Secretary of the Bakersfield California Stake, to continue their predatory conduct completely unhindered and protected, and in such action taken against Plaintiff's innocence and vulnerabilities, were careless, reckless, negligent, and consciously disregarded a minor's rights, as more fully described herein.

39.     Defendants also provided direct access to a large youth community wherein dangers to the community, including the Perpetrators, wielded power over Jane AC Doe.

## PLAINTIFF JANE AC DOE

40.     Plaintiff JANE AC DOE was raised attending The Church of Jesus Christ of Latter-day Saints and regularly participated in religious services, programs, and activities during the summers she spent with her grandparents and other family members in Bakersfield and Santa Barbara, California.

---

[9] See The Church Has Been Accused of Using a Victim's Hotline to Hide Claims of Sexual Abuse (https://www.vice.com/en/article/duty-to-report-the-mormon-church-has-been-accused-of-using-a-victims-hotline-to-hide-sexual-abuse-claims/)

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

41.     Between approximately 1994 and 2001, when Plaintiff was between the ages of eight and fifteen, she attended services and Church-sponsored youth activities at meetinghouses and facilities of the Bakersfield California Stake, located in Kern County, and the Santa Barbara California Stake, located in Santa Barbara County. These activities included Sunday services, Wednesday evening youth programs, and summer camps sponsored and organized by Defendants.

42.     At all relevant times, the perpetrators—including the Young Men's President of the Santa Barbara California Stake, and the Young Men's First Counselor and Secretary of the Bakersfield California Stake—served as ecclesiastical leaders within the Church, entrusted with authority, responsibility, and unsupervised access to Church members, including children such as Plaintiff. By virtue of their roles, these perpetrators used their positions of authority and trust to isolate Plaintiff during Church services, youth programs, and activities.

43.     On numerous occasions, the perpetrators lured Plaintiff into secluded areas of Church meetinghouses and facilities. In Santa Barbara, the Young Men's President regularly took Plaintiff onto the stage area of the gymnasium under the pretense of providing assistance or mentorship connected to youth programs. In Bakersfield, the First Counselor and Secretary repeatedly isolated Plaintiff in the chapel, recreational fields, and other areas of Church property, as well as during offsite youth activities. Once alone, the perpetrators exploited their authority and the lack of supervision to sexually abuse Plaintiff.

44.     The abuse began with touching, kissing, and fondling, which the perpetrators used to normalize sexual contact. This conduct escalated to repeated fondling beneath Plaintiff's clothing, including groping of her breasts and genitals with skin-to-skin contact.

45.     Over time, the perpetrators coerced Plaintiff into sexual intercourse and oral copulation, forcing Plaintiff to perform oral sex on them and subjecting Plaintiff to vaginal penetration on numerous occasions. The abuse was carried out in connection with Church-sponsored programs, including while Plaintiff was attending regular services, youth meetings, and Church camps.

46.     The abuse occurred too many times to count, escalating in both frequency and

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

severity each summer that Plaintiff attended Church services and youth activities in Bakersfield and Santa Barbara.

47.    Some of the abuse also occurred during Church-sponsored youth camps, including at Lake Berryessa and other retreat locations, where the perpetrators were given unsupervised authority over children and exploited these opportunities to sexually abuse Plaintiff.

48.    Plaintiff was frozen in fear during these incidents and was unable to resist or call for help. She was manipulated into silence by perpetrators who threatened that harm would come to people and things she loved, including her best friend and her cat, if she disclosed the abuse.

49.    Plaintiff did not disclose the abuse at the time due to fear, shame, and manipulation. As a result, no report was made to law enforcement, and Defendants took no action to investigate, restrict, or remove the perpetrators from their positions of authority or access to children.

50.    Plaintiff is informed, believes, and thereon alleges that leaders, officers, employees, volunteers, and agents of Defendants knew or should have known that the Young Men's President of the Santa Barbara California Stake, and the Young Men's First Counselor and Secretary of the Bakersfield California Stake, were isolating minor children, including Plaintiff, and engaging in inappropriate sexual contact on Church premises and at Church-sponsored camps.

51.    Plaintiff is further informed and believes that other minor children in the Bakersfield and Santa Barbara Stakes may also have been sexually abused by these perpetrators during the relevant period.

52.    Despite this knowledge, Defendants failed to act, and the perpetrators were allowed unsupervised access to Plaintiff during Church services, youth activities, and camps, during which they repeatedly sexually assaulted Plaintiff while she was a minor participant in The Church of Jesus Christ of Latter-day Saints in California.

53.    Prior to, during, and after the sexual assaults and molestation of Plaintiff, Defendants, through their agents, representatives, servants, employees, and/or volunteers, knew or should have known, reasonably suspected, and/or were otherwise on notice, that the perpetrators' conduct and relationships with young children, including Plaintiff, were inappropriate, unlawful,

1  wrongful, and/or otherwise created a risk of childhood sexual assault.

2       54.     At all relevant times, Defendants nevertheless continued to place these perpetrators

3  in positions of trust and authority over children, failed to supervise or monitor their interactions with

4  youth, and failed to implement or enforce adequate safeguards to protect minor congregants such as

5  Plaintiff.

6       55.     Defendants' failure to act allowed the perpetrators to continue their predatory

7  conduct completely unhindered, causing Plaintiff to suffer repeated sexual assaults, emotional

8  trauma, and lasting harm while participating in Defendants' programs and activities.

9       56.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff

10  suffered and continues to suffer physical, psychological, and emotional injuries, including post-

11  traumatic stress, depression, anxiety, and difficulties in relationships, all of which were caused by

12  the repeated sexual abuse Plaintiff endured as a minor under Defendants' supervision and control.

13      57.     Defendants, acting through their representatives, agents and employees, are liable

14  to Plaintiff for harm from the sexual assault, abuse, and other misconduct committed by

15  Perpetrators because, inter alia, Defendants:

16          a)  Negligently hired, supervised, retained, monitored, and/or investigated

17              Perpetrators.

18          b)  Breached their duty to implement and enforce adequate policies, guidelines,

19              training, education, and procedures aimed at preventing, deterring, uncovering, and

20              reporting instances of child sexual assault and/or abuse by adults, including its

21              agents, servants, representatives, staff, and volunteers.

22          c)  Negligently and/or intentionally failed to report the known and/or reasonably

23              suspected sexual assaults and/or sexual abuse, and molestation of Plaintiff to law

24              enforcement.

25      58.     Defendants also intentionally and willfully implemented various measures intended

26  and designed to, or which effectively made Perpetrators conduct harder to detect, including, but

27  not limited to:

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

a)  Permitting Perpetrators to remain in a position of good standing after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Perpetrators sexually abused and/or sexually assaulted, and molested minor children, including Plaintiff.

b)  Permitting Perpetrators continued and/or unsupervised access to Plaintiff, after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, of Perpetrators misconduct that created a risk of childhood sexual assault.

c)  Failing to inform or concealing from law enforcement officials the fact that Plaintiff and others were or may have been sexually assaulted after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Perpetrators had, and/or was engaged in the sexual assault of Plaintiff, thereby creating the circumstance where Plaintiff and others were less likely to receive medical/mental health care and treatment, thus exacerbating the harm to Plaintiff.

d)  Holding out and affirming Perpetrators to Plaintiff and Plaintiff's parent, other children and their parents, and to the community as being in good standing and trustworthy.

e)  Failing to take reasonable steps, and to implement reasonable policies, procedures, and safeguards to avoid, detect, and report acts of unlawful sexual conduct by employees, including Perpetrators with minor children.

f)  Failing to implement a system or procedure to supervise or monitor employees, volunteers, representatives or agents to ensure that they did not molest or assault minors in Defendants' custody or care, including Plaintiff.

59.    Plaintiff is informed, believes, and thereupon alleges, that Defendants' failure and/or refusal to satisfy their duties to Plaintiff was a part of Defendants' intended plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and assault, to

1    preserve a false appearance of propriety, and to avoid investigation and action by public authority

2    including law enforcement.

3        60.    Plaintiff is informed and believes, and on that basis alleges, that such actions were

4    motivated by a desire to protect the reputation of Defendants and each of them, and to protect the

5    monetary support of Defendants while fostering an environment where such assault could

6    continue to occur.

7        61.    The wrongful, intentional, and negligent acts and/or omissions of Defendants, and

8    each of them, were a direct and proximate cause of the childhood sexual assaults by Perpetrators

9    and the resulting injuries to Plaintiff.

10        62.    As a result of the above-described conduct, Plaintiff has suffered and continues to

11    suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional

12    distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life;

13    was prevented and will continue to be prevented from performing daily activities and obtaining the

14    full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning

15    capacity; and/or has incurred and will continue to incur expenses for medical and psychological

16    treatment, therapy, and counseling. As a result of the abuse at the hands of Perpetrators, Plaintiff's

17    life has been permanently altered.

18        63.    As a direct and proximate result of the sexual abuse by Perpetrators, Plaintiff suffered

19    severe psychological and emotional injuries, including depression, anxiety, panic attacks,

20    sleeplessness, nightmares, and dissociation. Plaintiff has struggled, and continues to struggle, in his

21    relationships with his family, peers, and others.

22        64.    The significant emotional and psychological injuries sustained by Plaintiff have

23    profoundly transformed his personality and ability to function in society. Plaintiff's suffering is

24    ongoing and permanent, and he will never fully recover from the trauma inflicted by Perpetrators

25                    **FIRST CAUSE OF ACTION**

26                        **NEGLIGENCE**

27        **(Plaintiff Against All Defendants and DOES 1-100)**

28

65.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

66.     Defendants are persons and entities who owed a duty of care to Plaintiff and/or her parents, and who had a duty to control the conduct of Perpetrators by virtue of the special relationship existing between Defendants, Plaintiff, and Perpetrators.

67.     Defendants knew, or in the exercise of reasonable care should have known, that Perpetrators engaged in such inappropriate sexual behavior and posed a danger to minors, including Plaintiff.

68.     Despite such knowledge, Defendants failed to take reasonable steps to prevent, investigate, or stop Perpetrators misconduct; failed to warn or protect Plaintiff and her parents; and failed to comply with their legal duties to protect minors in their care.

69.     As a direct and proximate result of Defendants' negligence, and as a substantial factor in causing Plaintiff's harm, Plaintiff was repeatedly sexually abused by Perpetrators. Had Defendants fulfilled their duties and responsibilities to Plaintiff, she would not have been subjected to such misconduct.

70.     As a direct and proximate result of Defendants' conduct, and as a substantial factor in causing Plaintiff's harm, Plaintiff suffered severe and permanent injuries including, but not limited to, lasting physical and emotional pain, severe psychological harm, ongoing emotional distress, past and future medical and psychological care and treatment, and past and future loss of earnings and earning capacity, all in an amount to be proven at trial but exceeding the jurisdictional minimum of this Court.

## **SECOND CAUSE OF ACTION**
### **NEGLIGENT SUPERVISION OF A MINOR**
### **(Plaintiff Against All Defendants and DOES 1-100)**

71.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

72.     Defendants, along with their agents and employees, were responsible for the care,

17

custody, control, supervision, and protection of minor children, including Plaintiff, who were entrusted to them by virtue of a special relationship and through the Church's community programs and religious traditions. The perpetrators, acting as the Young Men's President of the Santa Barbara California Stake, and the Young Men's First Counselor and Secretary of the Bakersfield California Stake, held positions of authority within the Church and were granted access to Church premises and Church-sponsored camps where they had direct and unsupervised contact with youth members. Accordingly, each Defendant owed Plaintiff a duty to adequately and properly supervise, monitor, and protect her from known and reasonably knowable dangers, including the risks posed by these perpetrators.

73.    Defendants breached their duty to properly and adequately supervise, monitor, and protect Plaintiff by, among other things: ignoring obvious indicators that the Young Men's President of the Santa Barbara California Stake, and the Young Men's First Counselor and Secretary of the Bakersfield California Stake, were engaged in inappropriate conduct toward minors; permitting Plaintiff to spend unsupervised, one-on-one time with these perpetrators in secluded areas of the meetinghouses, including the stage area of the gymnasium in Santa Barbara and throughout the chapel and recreational fields in Bakersfield; disregarding Plaintiff's whereabouts and wellbeing during Church-sponsored youth programs and camps, thereby enabling perpetrators to isolate and abuse her; and failing to intervene or implement safeguards to prevent the ongoing abuse.

74.    Defendants also recklessly and negligently failed to implement and/or enforce basic child protection policies and procedures, including screening, training, mandatory reporting, monitoring, and safeguards designed to prevent or detect sexual abuse of minors, which fell well below the standard of care.

75.    Had Defendants, and each of them, adequately performed their duties and responsibilities, Plaintiff would not have been subjected to the extreme, continuous, and unrelenting sexual assault and harassment she endured, and which continues to impact her life today, as alleged herein.

76.    As a direct and proximate result of Defendants' negligence, and as a substantial

factor in causing Plaintiff's harm, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical and psychological care and treatment, and past and future loss of earnings and earning capacity, in an amount to be proven at trial but exceeding the jurisdictional minimum of this Court.

## THIRD CAUSE OF ACTION
### SEXUAL ABUSE OF A MINOR
### (Plaintiff Against All Defendants and DOES 1-100)

77.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

78.     While Plaintiff was a minor member and Participant of Defendants' Church, Perpetrators exploited their position of authority, trust, and influence to engage in unlawful sexual acts and other harmful misconduct with Plaintiff. Plaintiff did not and could not consent to these acts due to his age.

79.     Defendants ratified Perpetrators sexual abuse of Plaintiff because Defendants knew, or in the exercise of reasonable care should have known, that Perpetrators were engaging in inappropriate and harmful conduct with Plaintiff and other minor youth members. Despite this, Defendants intentionally turned a blind eye and continued to allow Perpetrators to remain in a position of power and authority within the Church, failing to take any action to prevent further abuse. Defendants did not discipline, denounce, or discharge Perpetrators; instead, by failing to act, Defendants accepted and ratified their conduct, thereby enabling Perpetrators to continue their sexual abuse of Plaintiff.

80.     At all times, Defendants, were employees, administrators, leaders, and/or agents who were acting within the course and scope of their employment or agency with The Church of Jesus Christ of Latter-day Saints when they ratified Perpetrators criminal conduct and adopted it as if it were their own conduct.

81.     As a direct and proximate result of Defendants conduct, Plaintiff suffered severe and

permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

82.     In committing the acts described herein, the conduct of the Defendants', their agents and employees, and DOES 1-100, were despicable, and done with malice, oppression and fraud, justifying an award of punitive damages against each of those defendants. Plaintiff will therefore seek a court order allowing an amended pleading that includes a claim for punitive or exemplary damages pursuant to C.C.P. section 425.14 against religious entities, the Church, Temple Corporation, Bakersfield California Stake, and Santa Barbara California Stake.

### FOURTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (Plaintiff Against All Defendants and DOES 1-100)

83.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

84.     Acting with knowledge of their superior positions and special relationships with Plaintiff JANE AC DOE and realizing Plaintiff's heightened susceptibility to emotional distress due to her young age, inexperience, and vulnerability, Defendants embarked on a course of grooming, coercion, and intimidation so that the perpetrators could ultimately force Plaintiff to engage in unlawful sexual acts. At all relevant times, the Young Men's President of the Santa Barbara California Stake, and the Young Men's First Counselor and Secretary of the Bakersfield California Stake, held authoritative and influential positions within the Church that required them to interact with youth members. Using these positions of trust, the perpetrators isolated Plaintiff during Church services, youth programs, and Church-sponsored camps, lured her into private areas of the meetinghouses, including the stage area of the gymnasium in Santa Barbara and the chapel and recreational fields in Bakersfield, and engaged in unlawful sexual contact with her.

85.     Perpetrators misconduct was extreme and outrageous, exceeding all bounds tolerated

in a civilized community. Perpetrators sexually abused Plaintiff when Plaintiff was a minor, causing severe and lasting emotional and psychological injuries, including PTSD, anxiety, depression, nightmares, dissociation, and long-term difficulties with trust and intimacy. Perpetrators also exploited their position of authority to create circumstances in which Plaintiff, as a young child, felt unable to disclose the abuse, fearing retaliation, further harm, and loss of safety within his Church community.

86.    Perpetrators acts were intentional, willful, abusive, oppressive, and malicious, and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and severe emotional distress, or with reckless disregard for the high probability that such extreme distress would result.

87.    Defendants, by and through their agents and employees, ratified Perpetrators sexual abuse of Plaintiff because they had prior knowledge, or in the exercise of reasonable care should have had knowledge, of Perpetrators inappropriate sexual conduct with minors. Despite this knowledge, Defendants failed to take reasonable steps to protect Plaintiff and continued to allow Perpetrators to serve in positions granting them unsupervised access to youth members, thereby enabling the abuse.

88.    As a direct and proximate result of the actions and misconduct of Defendants, and their agents and employees, including but not limited to allowing Perpetrators continued access to Plaintiff and failing to protect her from foreseeable harm, Plaintiff has suffered and will continue to suffer severe emotional distress, psychological trauma, loss of enjoyment of life, and other damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

## FIFTH CAUSE OF ACTION
### NEGLIGENT HIRING, SUPERVISION & RETENTION OF AN UNFIT EMPLOYEE
### (Plaintiff Against All Defendants and DOES 1-100)

89.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

90.    Defendants, including their bishops, Presidents, clergy, counselors, employees, agents, and DOES 1–100, owed a duty to exercise reasonable care in investigating, hiring, training,

supervising, and retaining individuals who would work with minors in the Church community. This duty included protecting minors, including Plaintiff, from foreseeable harm by unfit or dangerous individuals under their authority.

91.     During the time Plaintiff was sexually abused by Perpetrators, Defendants knew, or in the exercise of reasonable care should have known, of complaints, reports, or warnings of Perpetrators misconduct. Despite this, Defendants failed to adequately investigate or take appropriate disciplinary or protective action.

92.     Instead, Defendants failed to protect Plaintiff and allowed Perpetrators to remain in a position of authority within the Church community. During the period of abuse, Defendants disregarded Plaintiff's safety and well-being. Plaintiff's ongoing participation in Church activities, coupled with Perpetrators repeated unsupervised access to her, should have alerted Defendants to the clear danger Plaintiff faced. Defendants' refusal to intervene or provide any protection reflected a complete disregard for their duty to safeguard Plaintiff.

93.     On information and belief, Defendants knew or in the exercise of reasonable case should have known that Perpetrators had engaged in repeated misconduct involving both minor male and female members of the Church community prior to and during the period of abuse, making the harm to Plaintiff not only foreseeable but preventable.

94.     Defendants breached their duty to properly investigate, hire, train, and supervise Perpetrators in connection with his role in Church activities.

95.     Had Defendants properly investigated, supervised, trained, and monitored Perpetrators' conduct, they would have discovered his unfitness to be given access to and authority over minors. Instead, their inaction allowed them to continue, unhindered, in his predatory conduct toward underage members of the Church community, including Plaintiff.

96.     Defendants negligently hired, supervised, retained, and monitored Perpetrators, and failed to ensure the safety of Plaintiff, a minor entrusted to their custody, care, and control.

97.     Defendants also negligently failed to implement or enforce adequate procedures and policies designed to prevent, detect, or deter the sexual abuse of minors by Church officers,

employees, clergy, volunteers, and other agents, including Perpetrators.

98.    Had Defendants fulfilled their duties to reasonably monitor, supervise, and investigate their clergy, leaders, and agents, including Perpetrators, Plaintiff would not have been subjected to the sexual abuse and related harm described herein.

99.    As a direct and proximate result of Defendants' negligence, and as a substantial factor in causing Plaintiff's harm, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical and psychological care and treatment, and past and future loss of earnings and earning capacity, in an amount to be proven at trial but exceeding the jurisdictional minimum of this Court

## SIXTH CAUSE OF ACTION

### NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE

### (Plaintiff Against All Defendants and DOES 1-100)

100.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

101.    Defendants, their clergy, employees, agents, volunteers, and DOES 1–100, owed a duty to exercise reasonable care in warning, training, and educating minors in their custody, including Plaintiff, about known and reasonably knowable dangers of sexual abuse, and to train and educate clergy, faculty, and staff about sexual harassment policies, appropriate boundaries, and methods to prevent, detect, and report sexual misconduct.

102.    Defendants breached their duty by, among other things: (a) failing to provide Plaintiff and other minors with information and education about how to identify, avoid, and report inappropriate sexual conduct by clergy, staff, or volunteers, including Perpetrators; and (b) failing to train clergy, faculty, and staff, including Perpetrators, regarding Defendants' sexual harassment policies, appropriate boundaries, and their obligations to protect minors.

103.    As a direct and proximate result of these failures, and as a substantial factor in causing Plaintiff's harm, Plaintiff was groomed, manipulated, and ultimately sexually abused by

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   Perpetrators.

2       104.    Had Defendants fulfilled their duties to warn, train, and educate, Plaintiff would not

3   have been subjected to the sexual abuse and related injuries described herein.

4       105.    As a direct and proximate result of Defendants' negligent conduct, and as a

5   substantial factor in causing Plaintiff's harm, Plaintiff suffered severe and permanent injuries

6   including, but not limited to, physical and mental pain and suffering, severe emotional distress,

7   psychological harm, physical injuries, past and future costs of medical and psychological care and

8   treatment, and past and future loss of earnings and earning capacity, in an amount to be proven at

9   trial but exceeding the jurisdictional minimum of this Court.

10                  **SEVENTH CAUSE OF ACTION**

11                  **BREACH OF MANDATORY DUTY:**

12      **FAILURE TO REPORT SUSPECTED CHILD ABUSE**

13          **(Plaintiff Against All Defendants and DOES 1-100)**

14      106.    Plaintiff re-alleges and incorporates by reference herein each allegation contained

15  herein above as though fully set forth and brought in this cause of action.

16      107.    Defendants, acting through their employees and agents, were at all times "mandated

17  reporters" pursuant to the provisions of Penal Code section 11166., et seq., also known as the Child

18  Abuse and Neglect Reporting Act. As mandated reporters of suspected child abuse, Defendants were

19  legally obligated to personally report reasonably suspected incidents of child abuse to the police

20  and/or child protective services within a very short period.

21      108.    Defendants, acting through their employees, knew or in the exercise of reasonable

22  care should have known that Perpetrators were engaged in sexual misconduct with minors, yet failed

23  to report the suspected abuse to the authorities.

24      109.    Defendants' employees violated the Child Abuse and Neglect Reporting Act, Penal

25  Code section 11166, et seq. They were acting within the course and scope of their employment when

26  they violated the reporting requirements, and therefore Defendants are vicariously liable for that

27  negligence.

28      110.    Defendants' failure to comply with their mandatory reporting duties allowed

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Perpetrators to remain in a position of authority and to continue sexually abusing Plaintiff, causing preventable and compounding harm.

111.    As a direct and proximate result of Defendants' violation of their statutory duty, and as a substantial factor in causing Plaintiff's harm, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical and psychological care and treatment, and past and future loss of earnings and earning capacity, in an amount to be proven at trial but exceeding the jurisdictional minimum of this Court.

## EIGHTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff Against All Defendants and DOES 1-100)

112.    Plaintiff incorporates by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

113.    Defendants owed Plaintiff a duty of care to protect her, as a minor in their Church community, from known and knowable sexual predators.

114.    Defendants unreasonably endangered Plaintiff's physical safety and emotional well-being by placing her in direct and repeated contact with Perpetrators. Defendants knew, or in the exercise of reasonable care should have known, that these perpetrators posed a danger to minor congregants including Plaintiff.

115.    As a result, Perpetrators were granted unfettered and unsupervised access to Plaintiff during Church services, youth activities, and Church-sponsored camps, thereby enabling the repeated sexual abuse of Plaintiff.

116.    Defendants knew, or in the exercise of reasonable care should have known, that exposing Plaintiff to Perpetrators under their authority would cause her to suffer severe emotional distress, in addition to the trauma of the abuse itself.

117.    As a direct and proximate result of Defendants' negligence, and as a substantial factor in causing Plaintiff's harm, Plaintiff suffered and continues to suffer physical pain, severe

emotional distress, psychological harm, and other injuries for which he is entitled to monetary damages and other relief according to proof at trial.

118.    Defendants' conduct was despicable and carried out with malice and oppression, because they knowingly harbored and empowered Perpetrators and placed them in direct contact with minor congregants, including Plaintiff, in conscious disregard of the safety and rights of those children.

119.    As a result of this wanton, willful, malicious, and oppressive conduct, Plaintiff is entitled to an award of punitive damages pursuant to Civil Code § 3294.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JANE AC DOE prays for judgment against Defendants THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, CORPORATION OF THE PRESIDENT OF THE BAKERSFIELD CALIFORNIA STAKE, THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, SANTA BARBARA CALIFORNIA STAKE OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, and DOES 1 through 100, and each of them, as follows:

1. For an award of special (economic) and general (non-economic) damages according to proof;
2. For an award of punitive and exemplary damages against Defendants, its agents and or employees, including Does 1 through 100;
3. Attorney's fees;
4. For costs of suit incurred herein; and
5. For such other and further relief as the Court deems just and proper.

///
///
///

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1

## **JURY DEMAND**

2      Plaintiff demands a trial by jury on all causes of action which may be tried by a jury.

3

4

5      Dated: October 2, 2025                    **ABIR COHEN TREYZON SALO, LLP**

6

7
                                               By: *Pinar Kermani*
8                                                 Derek Braslow, Esq. (Pro Hac Vice
       Forthcoming)
9                                                 Michael Zuzo, Esq.
                                                  Pinar Kermani, Esq.
10                                                Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL